UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL SNYMAN AND
CINDY DE VILLIERS,

                Plaintiffs,              No. 04 Civ. 2709 (LTS) (DFE)

      -v-

W.A. BAUM CO., INC.,

                Defendant.

---

MEMORANDUM OPINION AND ORDER

        In this action against W.A. Baum Co., Inc. ("Baum" or "Defendant"), a New York

corporation that is a manufacturer of medical supplies, Plaintiffs Carl Snyman and Cindy De

Villiers assert multiple claims arising from injuries allegedly suffered from mercury poisoning as

a result of mercury spillage from a Baumanometer.[1]  Plaintiffs' Complaint asserts three causes of

action on behalf of Carl Snyman ("Snyman")—for negligence, breach of implied warranty of

merchantability, and products liability—and a cause of action by Cindy De Villiers for loss of

spousal services.  The Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. §

1332.

        Defendant, pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for

summary judgment on all claims.  For the following reasons, Defendant's motion is granted in

part and denied in part.

---

[1]    "Baumanometer" is the trade name for a sphygmomanometer manufactured by
W.A. Baum.  (Compl. ¶ 7.)  A sphygmomanometer is a device used to measure
blood pressure.  (Id.)

BACKGROUND

_____The material facts are undisputed unless otherwise indicated.  Plaintiff Carl

Snyman is a licensed New Zealand medical professional.  (Def.'s Rule 56.1 Stmt. ¶ 3.[2])  In 1996

Snyman, as part of the purchase of a medical practice in New Zealand, purchased a second-hand

Baumanometer.  (Id.)  The Baumanometer originally had been sold in 1977 to Medical Supplies

New Zealand, Ltd.  (Id. ¶ 1.)  In September 1999, the mercury in the Baumanometer was released

from its housing, spilling onto the floor of Snyman's medical office.[3]  (Id. ¶ 5.)  At both the time

of the spill and the time of the filing of the complaint, Plaintiffs were citizens of New Zealand.

(Id. ¶¶ 6-7.)

        Between September and October 1999, Snyman noticed a metallic taste in his

mouth and suffered from severe diarrhea.  (Id. ¶ 8.)  On February 6, 2000, Snyman fell from his

mountain bike and sustained a severe head injury.  (Pls.' Rule 56.1 Stmt. ¶ 21.)  Snyman alleges

that, immediately following the injury, he exhibited strange behavior (i.e., attempting to dictate

into a remote control and weeping during consultations) and was diagnosed with post-concussion

syndrome.  (Id. ¶ 22.)  Plaintiffs further proffer that another doctor diagnosed Snyman as having

suffered a "traumatic brain injury that was 'at the mild end of the spectrum,'" and that, in April

2000, Snyman developed a severe bilateral anserine tendinitis of the knees, which persisted for at

least two and one-half months.  (Id. ¶ 24.)  Plaintiffs' proffers indicate that, in the period

---

[2]     Citations to the parties' respective Local Civil Rule 56.1 statements incorporate
        by reference citations to the underlying evidentiary submissions.

[3]     Plaintiffs allege that the spill occurred as a result of activating the release lever on
        top of the Baumanometer when Snyman was attempting to remove the device
        from its wall mounting bracket.  (Pls.' Rule 56.1 Stmt. ¶ 5.)

following Snyman's bike accident, numerous health professionals had great difficulty diagnosing the etiology of Snyman's symptoms. (Id. ¶ 27.) It is undisputed that, by November 2000, Plaintiff Snyman was suffering from "absolute fatigue." (Def.'s Rule 56.1 Stmt. ¶ 9; Pls.' Rule 56.1 Stmt. ¶ 9.) In their complaint, Plaintiffs allege that the symptoms Snyman suffered as a result of the exposure to mercury included "metallic taste in mouth, trembling in the extremities, severe diarrhea, and severe and prolonged chronic fatigue." (Compl. ¶ 14.) There are factual disputes as to when the symptoms were definitively connected with the mercury exposure.

Plaintiffs allege that it was not until May 2001, after consultations with multiple doctors, that Snyman had sufficient confidence to make claims to the Accident Compensation Corporation ("ACC") and Medical Assurance Society ("MAS") for mercury toxicity. (Pls.' Rule 56.1 Stmt. ¶¶ 12, 25-40.) Plaintiffs further allege that Snyman began to suffer from multiple chemical sensitivity ("MCS"), which was also attributable to mercury exposure, in January 2002. (Snyman Aff. ¶ 58.) Snyman only learned of this condition at a conference in May 2002,[4] and received medical assessments diagnosing his MCS condition in September 2002 and August 2004. (Snyman Aff. ¶¶ 64-65.) Plaintiffs commenced this action on April 8, 2004.

## DISCUSSION

Defendant moves for summary judgment, arguing principally that: (1) Plaintiffs' breach of warranty claim should be dismissed as untimely; (2) Plaintiffs' claims based on negligence and strict products liability should be dismissed as untimely; (3) Plaintiffs' attempt to

---

[4] Although Snyman's affidavit at ¶ 64 states the conference occurred in May 2001, the chronology of the affidavit generally, Plaintiffs' memorandum of law, and the Medical Report provided by Dr. William Rea (Waterman Aff., Ex. B), all suggest that the conference actually occurred in May 2002. The discrepancy is not material to the Court's analysis of the claim.

avoid dismissal by claiming a second injury of MCS fails because such injury is not recognized in federal court as a matter of law; (4) Plaintiffs' claim for compensatory damages is governed by New Zealand law and is consequently barred; (5) Plaintiffs cannot recover on a claim for punitive damages absent compensatory damages under applicable New York law; and (6) Defendant's conduct falls short of meeting the standard for punitive damages and, therefore, no basis exists for a punitive damages assessment. Defendant also argues that Plaintiffs' case should be dismissed based on the doctrine of *forum non conveniens*.

*Forum Non Conveniens*

Defendant moves for dismissal of the entire case on the grounds of *forum non conveniens*, arguing that New York is an inconvenient forum and that New Zealand is an adequate alternative forum in which to resolve the dispute. The primary purpose of any inquiry into *forum non conveniens* is to "ensure that the trial is convenient." Piper Aircraft v. Reyno, 454 U.S. 235, 256 (1981). *Forum non conveniens* allows courts to resist imposition on their jurisdiction even when jurisdiction may be authorized by a general venue statute. Gulf Oil v. Gilbert, 330 U.S. 501, 507 (1947). Dismissal based on *forum non conveniens* is appropriate when a plaintiff has imposed a heavy burden on the defendant and the plaintiff can offer no reasons of convenience to support his choice. BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F. Supp. 2d 274, 279 (S.D.N.Y. 2007) (citing Piper, 454 U.S. at 249).

The Second Circuit has articulated a three-step analysis to guide district courts' exercise of their broad discretionary authority to apply this principle. Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri v. United Technologies

Corp., 274 F.3d 65, 73 (2d Cir. 2001)(en banc)).  The first step in a *forum non conveniens* analysis is to determine the degree of deference due to the plaintiff's original choice of forum. Iragorri, 274 F.3d at 73.  The considerations governing deference represent a "sliding scale" on which a plaintiff's choice will be placed depending upon the degree of convenience reflected in her choice.  Id. at 71.  "Any review of a *forum non conveniens* motion starts with a 'strong presumption in favor of the plaintiff's choice of forum.'"  Norex, 416 F.3d at 146 (citing Piper, 454 U.S. at 255).  Generally, the greatest deference is afforded to a plaintiff's choice of his home forum.  Id.  Less deference is afforded to a foreign plaintiff's choice of a United States forum.  Id. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."  Norex, 416 F.3d at 154-155 (citing Iragorri, 274 F.3d at 71-72).

The second step in analyzing a *forum non conveniens* challenge is the availability and adequacy of a foreign forum.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  Piper, 454 U.S. at 254.  The third and final step in a *forum non conveniens* analysis is an analysis of the public and private interest factors resulting from litigation in the chosen forum. Iragorri, 274 F.3d at 74.

Defendant argues for dismissal in favor of proceedings in New Zealand, while Plaintiffs argue that New York is a sufficiently convenient forum.  Plaintiffs were both citizens and domiciliaries of New Zealand at the time of the injury.  (Def.'s Rule 56.1 Stmt. ¶ 7-8.) Therefore, since the Plaintiffs are foreign, their choice of an American jurisdiction is entitled to

less deference.  However, the lawsuit has a bona fide connection to the United States (the forum

of choice) because the product was manufactured in the United States and material witnesses as

to its manufacture are located in the United States.  (<u>See</u> Aff. of Donna Bakalor, Feburary 28,

2005, Ex. J, ¶ 1-3.)  Plaintiffs' choice is therefore entitled to some deference along the sliding

scale.

   The second prong of this test, the consideration of availability and adequacy of a

foreign forum, is not met, and compels the Court to deny Defendant's request to dismiss the case

on *forum non conveniens* grounds.  Specifically, New Zealand has a no-fault accident

compensation scheme "which provides that a person may not bring proceedings in a New

Zealand court for compensatory damages arising directly or indirectly out of personal injury

covered by the scheme."  (Aff. of Alan John Sherlock, February 25, 2005, ¶ 14.)  In that system,

while compensation for injuries suffered may be available, litigation of the subject matter is not.

Therefore, absent the availability of litigation, New Zealand's no-fault compensation system

renders that forum inadequate.

   As the Court has determined New Zealand to be an inadequate forum, it need not

address an analysis of private and public interest factors, the third step of the *forum non*

*conveniens* analysis.

   Accordingly, Defendant's motion to dismiss the case on the basis of *forum non*

*conveniens* is denied.


<u>Summary Judgment Standard</u>

   Summary judgment shall be granted in favor of a moving party where the

"pleadings, the discovery and disclosure material available on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)). "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Plaintiffs' Breach of Warranty Claim

In New York, claims for breach of warranty are subject to Section 2-725 of the New York Uniform Commercial Code, which provides that breach of implied warranty claims are subject to a four-year statute of limitations, and that a breach occurs when tender of delivery is made. N.Y. U.C.C. § 2-725 (2002).

The Baumanometer originally was sold by Defendant in 1977, and Plaintiff Snyman purchased it in 1996. Plaintiffs commenced this action in April 2004. The breach of warranty claim is thus untimely by any measure, and Defendant's summary judgment motion is

granted with respect to the Second Cause of Action.

<u>Plaintiffs' Negligence and Strict Products Liability Claims</u>

In the first and third causes of action, Snyman asserts claims for negligence and strict products liability. Those claims—with the possible exception of Snyman's negligence and strict products liability claims in connection with his allegation, raised in opposition to this motion, that he suffers from MCS as a result of the mercury exposure —are also untimely.

Snyman was injured while working at his medical practice in New Zealand. (Def's. Rule 56.1 Stmt. ¶ 5.) Therefore, pursuant to N.Y. CPLR § 202, his claims for negligence and strict products liability must be timely under the shorter of the relevant New York and New Zealand statutes of limitations.[5] Because the relevant New Zealand limitations period could be as long as six years,[6] the timeliness of these claims turns on the application of the three-year New

_____

[5]    N.Y. C.P.L.R. § 202 provides that "[A]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued. . . ." N.Y. C.P.L.R. § 202 (2002).

[6]    The applicable New Zealand statute of limitations is two-pronged. (Christopher John Hodson Aff., April 29, 2005, Ex. F ("New Zealand Limitation Act of 1950")). Specifically, "in an action in respect of bodily injury," a party has an absolute right to bring suit within two years of the reasonable date of discovery of the injury. <u>Id.</u> In its discretion, the Court can extend the statute of limitations by four years (to a maximum of six years). The relevant section of the Limitations Act of 1950 reads as follows: ". . . the Court may, if it thinks just to do so, grant leave accordingly, subject to such conditions (if any) as it thinks it is just to impose, where it considers that the delay in bringing the action was occasioned by mistake of fact or mistake of any matter of law other than the provisions of this subsection or by any other reasonable cause or that the intended defendant was not materially prejudiced in his defence or otherwise by the delay." (Christopher John Hodson Aff., April 29, 2005, Ex. F ("New Zealand Limitation Act of 1950")).

York statute of limitations.

_____*Timeliness Under New York Statute of Limitations*

N.Y. C.P.L.R. § 214-c(2) sets a three-year statute of limitations for personal injuries caused by latent effects of exposure to any substance. This statute of limitations begins to run upon the "date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y. C.P.L.R. § 214(c)(2002). This action was commenced on April 8, 2004. Accordingly, Plaintiffs' negligence and strict product liability claims must be dismissed as time-barred if they accrued prior to April 8, 2001. In Wetherhill v. Eli Lilly, the New York Court of Appeals held that discovery of the primary symptoms or manifestations of a latent injury, rather than the identification of the cause of the injury, marks the accrual of a cause of action for purposes of N.Y. C.P.L.R. 214-c(2). Thus, in that case, the DES-related claim of a woman who had discovered that she suffered from serious reproductive problems more than three years before it was even suggested to her that her mother might have ingested DES was held untimely under the statute. Wetherhill v. Eli Lilly, 89 N.Y.2d 506, 514 (1997).

Here, although the parties tender conflicting evidence and arguments as to when Snyman was in a position to attribute his serious medical problems to mercury exposure, it is undisputed that all of the problems identified in his complaint had manifested themselves—and had had severely deleterious effects on his health and ability to function—by February 2001. His negligence and strict product liability claims based on the symptoms, or injuries, identified in the complaint are therefore time-barred and Defendant is entitled to summary judgment dismissing those claims as a matter of law.

In his opposition papers, Plaintiff Snyman argues that, even if the primary conditions resulting from mercury poisoning were discoverable prior to April 8, 2001, he suffers from an additional injury whose existence was not discovered until after April 8, 2001, and that his negligence and products liability claims are therefore timely to the extent they relate to this additional injury. Plaintiff Snyman asserts that this MCS injury remains actionable under a common law doctrine that is commonly referred to as New York's "two-injury rule." The "two-injury" rule provides that manifestations of injuries in toxic tort cases that do not become apparent until many years of exposure may be actionable if they are "separate and distinct" from an earlier medical problem caused by the same problem, even if the statute of limitations on the previous injury has expired. Fusaro v. Porter-Hayden Co., 548 N.Y.S.2d 856, 860 (Sup. Ct. N.Y. Cty. 1989), aff'd, 170 A.D.2d 239 (1st Dept. 1991). Defendant seeks summary judgment on this aspect of Plaintiffs' claims, asserting in its reply brief that MCS is not cognizable in federal court as a matter of law because its existence is not supported by sufficient scientific knowledge and consensus. Because Plaintiffs' allegation of MCS was first raised in the opposition papers to this motion and Plaintiffs had neither the obligation nor the opportunity to respond to Defendant's reply brief argument, the Court concludes that Defendant is not entitled at this juncture to summary judgment dismissing the MCS-related claims, either on statute of limitations or scientific validity grounds. The Court will, however, issue an order to show cause directing Plaintiffs to demonstrate why their newly-asserted MCS-related claims ought not to dismissed in light of the arguments raised in Defendant's reply brief.

<u>Damages</u>

There is a dispute as to the proper law governing compensatory damages in this matter, and as to whether punitive damages would be appropriate in this matter. As the resolution of these disputes will only be necessary if the Court is persuaded that Plaintiffs' MCS-related claims are viable, the Court defers addressing these disputes at this time.

<u>Plaintiff De Villiers' Claim for Loss of Spousal Services</u>

Defendant's sole basis for its summary judgment motion on the loss of spousal services claim is that a claim for loss of spousal services claim cannot exist absent both the negligence and strict products liability claim. (<u>See</u> Def's. Rep. Mem. at 3.) In light of the denial of Defendant's summary judgment motion with respect to Plaintiff Snyman's negligence and products liability claims relating to his alleged MCS condition, Defendant's request for summary judgment as to Plaintiff De Villiers' loss of spousal services claim is denied to the same extent.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for dismissal of the case on the basis of *forum non conveniens* is denied. Defendant's motion for summary judgment is granted as to all of Plaintiffs' claims other than the negligence, strict product liability, and loss of spousal services claims relating to Plaintiff Snyman's alleged MCS condition.

This Memorandum Opinion and Order resolves docket entry no. 13.

SO ORDERED.

Dated:  New York, New York
        September 30, 2008

LAURA TAYLOR SWAIN
United States District Judge